# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**MICHAEL K. SUTHERLIN**
**SAMUEL M. ADAMS**
Michael K. Sutherlin & Associates
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jan 17 2013, 8:38 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANIEL BREWINGTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 15A01-1110-CR-550 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DEARBORN SUPERIOR COURT
The Honorable Brian D. Hill, Special Judge
Cause No. 15D02-1103-FD-84

**January 17, 2013**

**OPINION - FOR PUBLICATION**

**DARDEN, Senior Judge**

## SUMMARY

Daniel Brewington appeals his convictions for three counts of intimidation, two as Class A misdemeanors and one as a Class D felony, Ind. Code § 35-45-2-1 (2006); one count of attempted obstruction of justice, a Class D felony, Ind. Code §§ 35-44.1-2-2 (2012),[1] 35-41-5-1 (1977); and one count of perjury, a Class D felony, Ind. Code § 35-44.1-2-1 (2012).[2] We affirm in part, reverse in part, and remand with instructions.[3]

## ISSUES

Brewington raises five issues, which we expand and restate as:

I.    Whether the court abused its discretion by impaneling an anonymous jury.

II.   Whether the court erred by admitting a custody evaluation and a divorce decree into evidence.

III.  Whether one of Brewington's convictions for intimidation and his conviction for attempted obstruction of justice violate the Indiana Constitution's double jeopardy clause.

IV.   Whether the evidence is sufficient to sustain Brewington's convictions.

V.    Whether the court's final jury instructions were erroneous.

---

[1] At the time Brewington committed this offense, the crime of obstruction of justice was codified at Indiana Code section 35-44-3-4. The 2012 recodification did not alter the terms of the statute.

[2] At the time Brewington committed this offense, the crime of perjury was codified at Indiana Code section 35-44-2-1. The 2012 recodification did not materially alter the terms of the statute.

[3] We held oral argument on November 21, 2012 in the Court of Appeals courtroom in Indianapolis, Indiana. We thank the parties for their helpful presentations.

VI.     Whether Brewington received ineffective assistance of trial counsel.[4]

## FACTS AND PROCEDURAL HISTORY

This case arises out of a civil dissolution matter; it is thus necessary to set forth the circumstances of that matter in some detail.  Brewington and Melissa Brewington ("Melissa") were married in 2002 and had two children.  On January 8, 2007, Melissa filed a petition in the Ripley Circuit Court to dissolve her marriage with Brewington.  The Honorable Carl H. Taul was the original judge in the case.

The parties could not agree on custody of the children, so Melissa and Brewington (who was at that time represented by counsel) agreed to a custody evaluation and further agreed that Dr. Edward Connor ("Dr. Connor"), a clinical psychologist based in Kentucky, would perform the evaluation.  On or about September 7, 2007, Dr. Connor and Dr. Sara Jones-Connor ("Dr. Jones-Connor"), who is Dr. Connor's wife and one of his professional partners, filed their custody evaluation with the court under seal.  In the evaluation, the doctors determined that joint physical custody would not work because Melissa and Brewington had difficulty communicating effectively with each other.  Instead, they recommended that Melissa "be the sole custodian and primary residential parent," with Brewington receiving liberal visitation.  State's Ex. 9, p. 30.[5]

---

[4]  Brewington also argues in his reply brief for the first time that he was unable to effectively assist in his defense at trial due to mental incapacity.  A reply brief may not present new theories of appeal.  *Ward v. State*, 567 N.E.2d 85, 85 (Ind. 1991).

[5]  The transcript consists of two pretrial hearings, the trial, and a sentencing hearing.  Except where otherwise specified, this opinion cites to the trial transcript and to exhibits that were tendered at trial.

3

Soon after Dr. Connor and Dr. Jones-Connor filed the evaluation, Brewington informed Dr. Connor that he objected to the observations and conclusions stated therein. Dr. Connor offered to meet with Brewington again to consider additional information and perhaps submit an addendum to the evaluation, but Brewington rejected his offer. Instead, Brewington subjected Dr. Connor to a torrent of abusive letters demanding that Dr. Connor release his entire file to him, withdraw the evaluation, and withdraw from the case. These letters are discussed in more detail below. Brewington accused Dr. Connor of "dishonest, malicious, and criminal behavior," as noted in State's Exhibit 39, and "unethical and criminal practices," as noted in State's Exhibit 51.

Brewington also filed a complaint against Dr. Connor with the Kentucky Board of Psychology, but after receiving a response from Dr. Connor, the Board determined that the complaint did not merit further action. In addition, Brewington started a blog and repeatedly posted negative comments about Dr. Connor. Brewington also posted complaints about Dr. Connor on other websites. On MerchantCircle.com's website, which provides evaluations of local businesses in the community, Brewington described Dr. Connor as "a very dangerous man who abuses his power." State's Ex. 53.

In the meantime, Brewington, now proceeding pro se, filed a motion for change of judge on December 5, 2008. On December 18, 2008, Judge James D. Humphrey of Dearborn County was appointed special judge. On May 27, 2009, Judge Humphrey commenced a three-day final hearing. On August 17, 2009, he entered a judgment and final order, granting sole legal and physical custody of the children to Melissa. Based

4

upon the evidence, Judge Humphrey found Brewington "to be irrational, dangerous and in need of significant counseling." State's Ex. 140, p. 8. As a result, Judge Humphrey concluded that Brewington would not be permitted visitation with the children until he submitted to an evaluation by a court-approved mental health care provider to determine whether he was a danger "to the children, [Melissa] and/or to himself." *Id.* at p. 17. Judge Humphrey determined that if the evaluation demonstrated that Brewington posed no danger, then he could request supervised visitation, and if supervised visitation went well, then he could request unsupervised visitation.

On August 24, 2009, Brewington filed a motion for relief from judgment, asserting that Dr. Connor and Judges Taul and Humphrey had "conspired to obstruct [his] access to evidence," State's Ex. 142, p. 1, and that Judge Humphrey had "conducted himself in a willful, malicious, and premeditated manner" and had "caused irreparable damage to [the children] in [that] the Court mandated child abuse," *id.* at 9. He further asserted that he would be "posting this pleading and . . . letter" to his websites and "w[ould] be disturbing [sic] the information to the public through many avenues."[6] *Id.* Brewington attached as an exhibit to his motion a lengthy letter, wherein he asked of all readers: "Please copy this letter and send the letter along with your own personal comments and opinions to the Ethics & Professionalism Committee Advisor located in Dearborn County." State's Ex. 142, attachment, p. 6. Brewington then posted the name

---

[6] Judge Humphrey denied Brewington's motion for relief from judgment, so Brewington obtained counsel and appealed. A panel of this Court affirmed Judge Humphrey's divorce decree in an unpublished per curiam decision. *Brewington v. Brewington*, No. 69A05-0909-CV-542 (Ind. Ct. App. July 20, 2010), *trans. denied*.

of Heidi Humphrey, who is Judge Humphrey's wife, and the Humphreys' home address, although he did not identify Mrs. Humphrey as the judge's wife or the address as their residence. Mrs. Humphrey had previously served as an advisor on the Indiana Supreme Court's Judicial Ethics and Professionalism Committee, but that committee does not receive or investigate complaints about judicial performance. Furthermore, the committee's website did not post Mrs. Humphrey's home address, nor did it suggest or encourage the public to contact individual committee members with concerns about specific cases. The Humphreys received several letters complaining about Brewington's case at home.

After the divorce, and for a period of approximately eighteen months, Brewington continued to send Dr. Connor vitriolic letters and to publicly accuse Dr. Connor of criminal behavior. For example, on January 20, 2010, Brewington posted on his blog that Dr. Connor was "using [custody] evaluations as a means to gain some kind of perverted sexual stimulation." State's Ex. 197. Throughout 2010, Brewington posted at least fifteen articles discussing Dr. Connor. In addition, Brewington posted at least nine articles discussing Judge Humphrey, in which he described the judge as "corrupt," State's Ex. 160, and accused him of engaging in "unethical/illegal behavior," State's Ex. 170. He also repeatedly referred to the judge as a child abuser.

A grand jury investigation began in Dearborn County on February 28, 2011. Brewington testified before the grand jury and asserted that he did not know Mrs. Humphrey was Judge Humphrey's wife. On March 7, 2011, the grand jury returned a

six-count indictment. The indictment charged Brewington with one count of intimidation as a Class A misdemeanor in relation to Dr. Connor ("Count I"); one count of intimidation as a Class D felony in relation to Judge Humphrey ("Count II"); a second count of intimidation as a Class A misdemeanor in relation to Mrs. Humphrey ("Count III"); one count of attempted obstruction of justice as a Class D felony in relation to Dr. Connor ("Count IV"); one count of perjury as a Class D felony for falsely stating during grand jury proceedings that he did not know that Mrs. Humphrey was Judge Humphrey's wife ("Count V"); and one count of unlawful disclosure of grand jury proceedings as a Class B misdemeanor (" Count VI").

Prior to trial, the State filed a Motion for Confidentiality of Jurors' Names and Identities. Brewington did not file a response, nor did his attorney object at trial. The trial court granted the State's motion and impaneled an anonymous jury. On October 6, 2011, the jury convicted Brewington of every charge except Count VI. On October 24, 2011, the trial court sentenced Brewington to one year for Count I, two years for Count II, six months for Count III, two years for Count IV, and one year for Count V. The court ordered Brewington to serve Counts II and III concurrently and Counts I and IV concurrently, to be served consecutively with the other counts, for an aggregate term of five years. This appeal followed.

DISCUSSION AND DECISION[7]

I. ANONYMOUS JURY

Brewington contends that the trial court erred by granting the State's request for an anonymous jury. An anonymous jury is one in which certain identifying information, particularly jurors' names and addresses, is withheld from the public as well as from the parties. *Major v. State*, 873 N.E.2d 1120, 1125 (Ind. Ct. App. 2007), *trans. denied*. An anonymous jury may implicate "a defendant's Fifth Amendment right to a presumption of innocence" because it raises a concern in jurors that the defendant is a dangerous person. *Id.* at 1126. Furthermore, impaneling an anonymous jury may interfere with a defendant's Sixth Amendment right to trial by an impartial jury by depriving the defendant of information that may be useful during jury selection. *Id.*

Nevertheless, a trial court may impanel an anonymous jury if it: (a) concludes that there is a strong reason to believe the jury needs protection, and (b) takes reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected. *Id.* at 1126-27. The trial court may consider several factors, including: (1) the defendant's involvement in organized crime, (2) his participation in a group with the capacity to harm jurors, (3) the defendant's past attempts to interfere with the judicial process, (4) the severity of the punishment that the defendant

---

[7] The State filed a Notice of Additional Authority shortly before oral argument. Brewington filed an objection, noting that the cases cited by the State in the Notice were issued well before this appeal began and that the Notice otherwise failed to comply with the requirements for such notices under Indiana Appellate Rule 48. Consequently, Brewington asks this Court to disregard the cases discussed by the State in its Notice. We are not free to disregard precedent merely because it is raised in a Notice of Additional Authority that does not comply with the requirements of Appellate Rule 48.

would face if convicted, and (5) whether publicity regarding the case presents the prospect that the jurors' names could become public and expose them to intimidation or harassment. *See id.* at 1127. We review the trial court's decision to impanel an anonymous jury for an abuse of discretion. *Id.*

In ruling on the State's motion at a pretrial hearing, the trial court told Brewington:

> [B]ased on the evidence that was presented at the bond reduction hearing that some of your, and call them alleged or whatever, I think that the State has made a prima facie case at least that there's been a history of disclosing private information. I don't know if there would be information to say that you were a physical risk to their safety but I think the privacy issue is definitely a concern based on the evidence that has been previously submitted and for that reason the confidentiality of juror[s'] names and identities is going to be granted.

Final Pre-Trial Hearing Tr. p. 68. The trial court further stated that it would consider revealing a juror's identity during trial if Brewington showed good cause for such disclosure.

We note that the State attached a copy of the opinion in *Major* to its Motion for Confidentiality of Jurors' Names and Identities, so the trial court was made aware of that authority. Furthermore, at the pretrial hearing on the State's motion, the trial court noted that pursuant to "Jury Rule #10," the court was obligated to maintain the confidentiality of information relating to a juror or a prospective juror "to an extent consistent with the Constitutional statutory rights of the parties." *Id.* at 67. Thus, the trial court was aware

9

that it was obligated to balance Brewington's constitutional rights against the need to shield the jury from undue harassment.

Regarding the evidence supporting the State's motion, the trial court noted that it had reviewed the evidence from the bond hearing. At the bond reduction hearing, the State submitted copies of Brewington's numerous harshly-worded internet posts about Dr. Connor and Judge Humphrey. In those posts, Brewington repeatedly insulted and belittled Dr. Connor and Judge Humphrey, accusing them of criminal behavior and professional misconduct. He also made comments about the neighborhood in which Dr. Connor lived, posted a picture of Dr. Connor dancing at a relative's wedding, and published Judge Humphrey's home address, although he did not identify it as such. Based upon this evidence, the trial court appropriately considered the very real prospect that Brewington would publish jurors' personal information and expose them to ridicule, intimidation, and/or harassment if the outcome of the trial was unfavorable to him. Furthermore, the trial court left open the possibility of disclosing jurors' information if necessary for a fair trial. We conclude that the trial court correctly balanced the needs of effective trial administration and court security against Brewington's constitutional rights. The trial court did not abuse its discretion.

## II. ADMISSION OF CUSTODY EVALUATION AND DIVORCE DECREE

Brewington argues that the trial court erred by admitting Dr. Connor's custody evaluation and Judge Humphrey's divorce decree because he believes those documents were "extremely unfairly prejudicial and contained inadmissible information."

Appellant's Br. p. 44. However, he acknowledges that he did not object at trial to those documents based on the grounds he wishes to raise on appeal. Furthermore, invited error, if any, is not grounds for relief. Therefore, his claims of evidentiary error have not been preserved for appellate review. *See Pattison v. State*, 958 N.E.2d 11, 20 (Ind. Ct. App. 2012) ("[F]ailure to object at trial results in waiver of the issue on appeal."), *trans. denied.* However, we will address the admission of these documents below in the context of Brewington's claim of ineffective assistance of trial counsel.[8]

### III. INDIANA DOUBLE JEOPARDY CLAUSE

Brewington argues that his convictions for Count I, criminal intimidation of Dr. Connor, and Count IV, attempted obstruction of justice, violate article I, section 14 of the Indiana Constitution, also known as the double jeopardy clause, which provides, "No person shall be put in jeopardy twice for the same offense."[9] In *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999), our Supreme Court held that two or more offenses are the "same offense" in violation of the double jeopardy clause if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

Brewington's argument rests on the actual evidence portion of the standard set forth in *Richardson.* When we look to the actual evidence presented at trial, we will

---

[8] Brewington does not argue that the admission of those documents was fundamentally erroneous.

[9] Brewington does not present a claim under the Double Jeopardy Clause of the United States Constitution.

11

reverse a conviction if there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Johnson v. State*, 749 N.E.2d 1103, 1108 (Ind. 2001) (quoting *Richardson*, 717 N.E.2d at 53). In determining what facts were used to support each conviction, we consider the evidence, charging instrument, final jury instructions, and arguments of counsel. *Cole v. State*, 967 N.E.2d 1044, 1051 (Ind. Ct. App. 2012).

Here, in the indictment the grand jury alleged that Brewington committed intimidation "on or about or between August 1, 2007, and February 27, 2011," by communicating a threat to Dr. Connor with the intent that Dr. Connor be placed in fear of retaliation for issuing his custodial evaluation. Appellant's App. p. 21. The indictment further alleged that Brewington committed attempted obstruction of justice "on or about or between August 1, 2007, and August 1, 2009," by "intimidat[ing] or harass[ing]" Dr. Connor. *Id.* at 24. The trial court incorporated the grand jury indictment into its final jury instructions. Thus, the jury was instructed that Brewington's conduct of harassing Dr. Connor, which was alleged to have occurred during overlapping periods of time, could support both convictions.

Furthermore, based upon our review of the record, the same evidence was provided at trial to support the charge of intimidating Dr. Connor and the charge of attempted obstruction of justice arising out of Brewington's harassment of Dr. Connor. The State presented to the jury a large amount of Brewington's faxed letters to Dr.

12

Connor and internet postings about Dr. Connor, all of which supported the State's contentions that Brewington threatened Dr. Connor in retaliation for Dr. Connor's unfavorable custody evaluation and that Brewington harassed Dr. Connor in an attempt to coerce him to withdraw his custody evaluation and remove himself from the case.

Finally, we turn to the arguments counsel presented to the jury. When discussing the intimidation charge, the prosecutor told the jury,

> [Brewington] tried to keep Ed Connor from coming in and sitting in that witness chair and testifying as the independent custody evaluator that [sic] he had been hired by Dan Brewington's lawyer and his wife's lawyer to do. He tried to do that but he wasn't successful. His lack of success has nothing to do with his excess of guilt. That's intimidation.

Tr. p. 454. Turning to the charge of attempted obstruction of justice, the prosecutor said to the jury:

> [I]f you attempt to do something, that's a crime. Again, just because you're not successful doesn't mean that you didn't commit a criminal act. And it's with an attempt to obstruct justice for only one reason – because Dr. Ed Connor wouldn't let this man bully him. I mean he agreed to the custody evaluation. Once it's filed, that's when the game started to get off . . . .

*Id.* at 476. Next, the prosecutor said that Brewington was guilty of attempted obstruction of justice because he tried "to keep Dr. Connor from sitting in that witness chair in the divorce proceeding." *Id.* at 478. The prosecutor advised the jury that it should consider Brewington's conduct starting on "April the 1st of 2008" as the evidence that supports the charge of attempted obstruction of justice, *id.* at 477, but the prosecutor also discussed documents Brewington issued after that date in support of the charge of intimidating Dr. Connor. Additionally, the prosecutor generally argued that "all these

13

faxes and other means that [Brewington] used to threaten and threaten and bully and bully" is evidence of a substantial step in attempting to commit obstruction of justice. *Id.* at 478. Thus, the prosecution asked the jury to consider essentially the very same acts by Brewington in support of the charges of intimidation of Dr. Connor and attempted obstruction of justice.

Based upon our review of the charging document, the evidence submitted at trial, the arguments of counsel, and the jury instructions, we conclude that there is a reasonable possibility that the evidentiary facts used by the jury to establish all of the essential elements of intimidation of Dr. Connor may also have been used to establish all of the essential elements of attempted obstruction of justice. *See Guffey v. State*, 717 N.E.2d 103, 107 (Ind. 1999) (determining that convictions for conspiracy to commit armed robbery and aiding in the commission of armed robbery violated the Indiana Constitution's double jeopardy clause because the jury instructions directed the jury to consider the same evidentiary facts to support both convictions). Consequently, both convictions cannot stand. When two convictions contravene double jeopardy principles, "we vacate the conviction with less severe penal consequences." *See Richardson*, 717 N.E.2d at 55. Thus, Brewington's conviction for Count I, intimidation of Dr. Connor, must be vacated.[10]

---

[10] Vacatur of the intimidation conviction involving Dr. Connor does not affect Brewington's aggregate sentence because the trial court directed that his sentence for that conviction would be served concurrently with his sentence for attempted obstruction of justice, which is to be served consecutively to his convictions for intimidating Judge Humphrey and for perjury.

## IV. SUFFICIENCY OF THE EVIDENCE

Brewington argues that there is insufficient evidence to sustain his convictions for intimidation of Judge Humphrey, intimidation of Mrs. Humphrey, attempted obstruction of justice, and perjury.[11]

## A. STANDARD OF REVIEW

When an appellant challenges the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses, and we affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable jury to find the defendant guilty beyond a reasonable doubt. *Joslyn v. State*, 942 N.E.2d 809, 811 (Ind. 2011).

## B. INTIMIDATION OF JUDGE HUMPHREY AND MRS. HUMPHREY

In order to convict Brewington of both charges of intimidation, the State was required to prove beyond a reasonable doubt for each charge that: (1) Brewington (2) communicated to another person (3) a threat (4) with the intent (5) that the other person be placed in fear of retaliation for a prior lawful act. Ind. Code § 35-45-2-1. The offense is usually a Class A misdemeanor but becomes a Class D felony if the intended recipient of the threat is a judicial officer. *Id.* The General Assembly has defined a "threat" as:

an expression, by words or action, of an intention to:

(1) unlawfully injure the person threatened or another person, or damage property;

---

[11] Brewington further argues that there is insufficient evidence to sustain his conviction for intimidation of Dr. Connor, but we need not address this argument because we have determined that his conviction must be vacated due to a violation of the Indiana double jeopardy clause.

15

(2) unlawfully subject a person to physical confinement or restraint;

(3) commit a crime;

(4) unlawfully withhold official action, or cause such withholding;

(5) unlawfully withhold testimony or information with respect to another person's legal claim or defense, except for a reasonable claim for witness fees or expenses;

(6) expose the person threatened to hatred, contempt, disgrace, or ridicule;

(7) falsely harm the credit or business reputation of the person threatened; or

(8) cause the evacuation of a dwelling, a building, another structure, or a vehicle.

Ind. Code § 35-45-2-1(c). Whether conduct amounts to a threat is an objective question of fact for the jury to decide. *Owens v. State*, 659 N.E.2d 466, 474 (Ind. 1995).

We begin with Brewington's conviction for intimidating Judge Humphrey. At trial, the State alleged that Brewington communicated a threat to Judge Humphrey, with the intent of placing him in fear of retaliation for issuing the divorce decree in this case. Furthermore, the State argued that Brewington issued several different types of threats, as defined by Indiana Code section 35-45-2-1(b), to the judge. We focus our analysis on whether Brewington threatened Judge Humphrey by expressing an intent to expose him "to hatred, contempt, disgrace, or ridicule." Ind. Code § 35-45-2-1(c)(6).

Brewington argues that for purposes of the First Amendment, the State's theory that he threatened to expose Judge Humphrey to hatred, contempt, disgrace, or ridicule is,

in essence, a claim of "criminal defamation." Appellant's Br. p. 33. Brewington further argues that because the State's theory of liability is, in his opinion, defamation, then the elements of civil defamation apply and the State was obligated to prove that any statements Brewington made to or about Judge Humphrey were knowingly false. If his statements were not knowingly false, he reasons, then they deserve constitutional protection because he was commenting upon the work product of a public official, and he believes he cannot be held criminally liable for those statements.

As an analogy, the offense of intimidation in Indiana shares common language with past statutes outlawing blackmail. *See Meek v. State*, 205 Ind. 102, 185 N.E. 899, 900 (1933) (quoting a statute defining blackmail, in relevant part, as "accusing or threatening to accuse[ ] any person of any crime punishable by law, or of any immoral conduct which, if true, would tend to degrade and disgrace such person, or in any way subject him to the ridicule or contempt of society"). While the purpose of the tort of civil defamation is to protect individuals from reputational attacks, *Melton v. Ousley*, 925 N.E.2d 430, 437 (Ind. Ct. App. 2010), the crime of intimidation is more than mere criminalization of the publication of disgraceful details about the victim's conduct. Additionally, the crime consists of threatening the victim with the intention of placing the victim in fear for a prior lawful act. The truthfulness of the threatened disclosure is not necessarily relevant to prosecution because the harm, placing a victim in fear, occurs whether the publicized conduct is true or false. *See Kessler v. State*, 50 Ind. 229, 233 (1875) (determining in a prosecution for blackmail, where Kessler threatened to disclose

17

that the victim had a mistress, that the State did not need to allege that Kessler's claim was false).

We find guidance in *People v. Hubble*, 401 N.E.2d 1282, 1283 (Ill. App. Ct. 1980). In that case, Hubble was charged with intimidation because he told his ex-wife that if she testified against him in an upcoming criminal case, he would bring charges against her for trespass, forgery, and violation of his parental visitation rights. On appeal, Hubble argued that he had a good-faith belief that his ex-wife had committed those crimes, and he had a right to threaten such action without violating the intimidation statute. The Appellate Court of Illinois disagreed, noting that the offense is, in essence, "the exercise of an improper influence." *Id.* at 1285. The court further observed, "No public policy is served by allowing accusations to be made, even against the guilty, for the sole purpose of extortion." *Id.* Consequently, "it is immaterial whether the facts threatened to be disclosed are true or not." *Id.*

In this action, as noted, the State alleged that Brewington's actions were committed with the intent of placing Judge Humphrey in fear by threatening him in retaliation for issuing the divorce decree, and that he intended to threaten by exposing the judge to hatred, contempt, disgrace, or ridicule. In keeping with our longstanding precedent and the persuasive holding in *Hubble*, we conclude that it is irrelevant whether the conduct Brewington intended to disclose to the public actually occurred or was an outright fabrication. Consequently, we reject Brewington's claim that principles of civil defamation law must be incorporated into Indiana Code section 35-45-2-1(c)(6), and the

18

State was not required to provide evidence that Brewington's public statements about Judge Humphrey were knowingly false.

Even if the State was required to prove that Brewington knew his internet postings and other communications about Judge Humphrey were false, there is ample evidence of Brewington's knowledge. His public comments went well beyond hyperbole and were capable of being proven true or false. Over the course of at least a year, Brewington repeatedly called Judge Humphrey a "child abuser." State's Ex. 170; *see also* State's Ex. 162 ("Judge Humphrey's actions constitute child abuse"), State's Ex. 168 ("abuser of children"), State's Ex. 173 (Judge Humphrey "abuse[s] children who are part of the family court system"). Brewington also called Judge Humphrey "corrupt," State's Ex. 160, and accused him of engaging in "unethical/illegal behavior." State's Ex. 170.

Brewington argues he was merely stating his opinion that, in constraining his right to see his children, Judge Humphrey was essentially committing child abuse. However, it is clear from the divorce decree that Judge Humphrey, in the exercise of lawful judicial discretion and out of concern over Brewington's history of "irrational behavior," State's Ex. 140, p. 8, imposed reasonable visitation restrictions upon Brewington out of a desire to protect the children's well-being. Only by willfully misinterpreting the terms of the divorce decree in bad faith could one argue that Judge Humphrey's conduct constituted an intentional act to harm Brewington's children. Thus, even if the State was required to prove that Brewington knew his public statements about Judge Humphrey were false, there was ample evidence from which the jury could have concluded that Brewington

19

accused Judge Humphrey of child abuse and professional misconduct while knowing that the accusations were false.

Brewington argued at oral argument that Indiana Code section 35-45-2-1 violates the First Amendment by failing to include a requirement that a person who threatens to expose a victim to hatred, contempt, disgrace, or ridicule must know that his statements about the victim are false. Without the element of knowing falsity, Brewington claims, the statute is unconstitutionally overbroad because it can punish reasonable criticism of government officials. A party challenging the constitutionality of a statute bears the burden of proof, and all doubts are resolved against that party. *Akers v. State*, 963 N.E.2d 615, 617 (Ind. Ct. App. 2012), *trans. denied*. A statute is presumed constitutional until the party challenging its constitutionality clearly overcomes the presumption by a contrary showing. *Id.*

Under federal overbreadth analysis, we must determine whether the statute substantially prohibits activities protected by the First Amendment. *Jackson v. State*, 634 N.E.2d 532, 536 (Ind. Ct. App. 1994). The First Amendment protects the right of citizens to criticize government decisions with which they disagree, and that right cannot be taken lightly. However, the conduct that is criminalized here, communicating a threat to a victim to place the victim in fear of retaliation for a prior lawful act, necessarily falls outside the realm of protected criticism of government decisions due to the requirement of criminal intent. That is, the statute alleges, and the State must prove, that the defendant intended to place the victim in fear by a threat. Such conduct is of no value to

20

public discourse and is, in fact, harmful to the administration of justice when the victim is a judicial officer. We cannot conclude that Indiana Code section 35-45-2-1 substantially prohibits activities protected by the First Amendment, and Brewington's claim fails. *See id.* (determining that the Indiana Gang Statute was not constitutionally overbroad because it required that the defendant actively participate in a group with knowledge of the group's criminal activities and have a specific intent to further the group's criminal conduct). Consequently, we affirm Brewington's conviction for intimidation of Judge Humphrey.

Next, we turn to Brewington's conviction of intimidation of Mrs. Humphrey. As noted above, the State must establish that Brewington intended to place her in fear for her commission of a prior legal act. Ind. Code § 35-45-2-1. Brewington argues that his act of posting Mrs. Humphrey's address on the internet and inviting the public to send comments to her about his divorce case did not constitute a threat as defined by statute. We agree. Brewington did not identify Mrs. Humphrey as Judge Humphrey's wife or identify the address as her home in his internet postings and letters. Furthermore, he did not describe her in a negative light or encourage anyone to do anything other than write letters to her, as a purported public official, about his divorce case. Although we do not condone Brewington's unjustifiable and bad faith attempt to drag Mrs. Humphrey into his divorce litigation, his actions in relation to Mrs. Humphrey do not meet the definition of a threat for purposes of the intimidation statute. *See Jackson v. State*, 570 N.E.2d 1344, 1347 (Ind. Ct. App. 1991) (finding insufficient evidence of a threat where Jackson, acting

21

as a messenger, asked a judge to dismiss a criminal case against a friend in exchange for the friend's dismissal of his civil lawsuit against the judge), *trans. denied*. This conviction must be vacated.[12]

## C. ATTEMPTED OBSTRUCTION OF JUSTICE

In order to obtain a conviction for attempted obstruction of justice, the State was required to prove beyond a reasonable doubt that Brewington: (1) knowingly or intentionally (2) with the specific intent to commit obstruction of justice (3) engaged in conduct that constituted a substantial step toward (4) inducing by threat, coercion, or false statement (5) Dr. Connor, a witness in an official proceeding or investigation, (6) to withhold or unreasonably delay in producing information, a document, or a thing. *See* Ind. Code §§ 35-44.1-2-2 (formerly codified as Ind. Code § 35-44-3-4), 35-41-5-1.

In the context of obstruction of justice, coercion is defined as some form of undue pressure or influence exerted on the will or choice of another. *Brown v. State*, 859 N.E.2d 1269, 1271 (Ind. Ct. App. 2007), *trans. denied*. Forms of pressure or influence include, but are not limited to, intimidation, physical force, threats, and harassment. *Id.* Whatever the form of pressure or influence, there should be a consequence for failure to comply; otherwise the statement is not coercive, but is merely a request. *Id.*

Brewington argues that his conviction is barred by the First Amendment to the United States Constitution. Specifically, he says that his communications to and/or about

---

[12] Vacatur of the intimidation conviction involving Mrs. Humphrey does not affect Brewington's aggregate sentence because the trial court directed that his sentence for that conviction would be served concurrently with his sentence for intimidation of Judge Humphrey, which is to be served consecutively to Brewington's convictions for attempted obstruction of justice and for perjury.

Dr. Connor were constitutionally protected unless the State proved that they amounted to a "true threat[ ]" of violence against Dr. Connor, and there is no evidence of such a true threat. Appellant's Br. p. 30. We disagree that the First Amendment bars this conviction, because a defendant need not threaten violence to commit the crime of obstructing justice. *See Sheppard v. State*, 484 N.E.2d 984, 989 (Ind. Ct. App. 1985) ("[I]f the defendant were charged with making repeated, harassing contacts with the witness with such intent [to coerce], the threshold of pressure might be reached."), *trans. denied*. If there is sufficient evidence of non-violent coercion to satisfy the statutory requirements, we need not consider whether there is evidence of a true threat of violence.

In this case, Dr. Connor and Dr. Jones-Connor submitted their custody evaluation on August 29, 2007, and Judge Humphrey issued the divorce decree on August 17, 2009. We therefore consider the evidence from between those two dates to determine whether the jury properly found that Brewington coerced Dr. Connor in regard to his participation in the divorce case. When Brewington told Dr. Connor that he disagreed with the conclusions and recommendations in the evaluation, Dr. Connor offered to meet with him and consider any additional information. Brewington rejected Dr. Connor's offer and instead chose to send a large volume of angry letters to Dr. Connor's office. As an example, on March 28, 2008, Brewington faxed Dr. Connor a letter demanding the release of Dr. Connor's full case file and advised him to "contact an attorney." State's Ex. 27. On April 1, 2008, Brewington faxed Dr. Connor another letter in which he accused Dr. Connor of "knowingly and willingly breaching the contract" governing his

services as custodial evaluator. State's Ex. 31. On the same day, he faxed Dr. Connor another letter captioned "Dr. Connor's unethical behavior." State's Ex. 34. In the letter, Brewington told Dr. Connor he had "been in contact with other parents who have similar complaints" about Dr. Connor. *Id.* He also told Dr. Connor, "**IF YOU CONTINUE TO CONDUCT YOURSELF IN AN** [sic] **MALICIOUSLY UNETHICAL AND POSSIBLY ILLEGAL MANNER, I WOULD SUGGEST YOU PULL THE REPORT AND GET AN ATTORNEY**." *Id.* (bold and capitalizations in original). On April 2, Brewington sent another fax to Dr. Connor directing him to "fax Judge Taul a letter apologizing for misrepresenting and your inappropriate conduct or feel free to contact the Kentucky Board of Examiners of Psychology and make them aware of your actions." State's Ex. 36.

Next, on July 30, 2008, Brewington warned Dr. Connor in a letter that if he refused to produce a full copy of the case file, that "would force me to file a lawsuit against you, Dr. Sara Jones-Connor, Connor and Associates PLLC, and other people and/or employees affiliated with Connor and Associates for, at the least, breach of contract. I would be conducting all of the depositions and discoveries." State's Ex. 39. Brewington characterized Dr. Connor's conduct as "criminal behavior" and "gross retaliatory behavior against me for trying to expose your wrong doing." *Id.* He further advised Dr. Connor to "place his malpractice liability insurance carrier on notice" and that he would file "formal complaints with the Kentucky Board of Examiners of Psychology, the American Psychological Association, the Indiana State Psychology

24

Board and the Professional Academy of Custody Evaluators (PACE) as well as notify the Attorneys General in the respective states." *Id.* Brewington also made reference to a deposition in which Dr. Connor had testified in 2004, implying that Dr. Connor's sworn testimony about his professional education conflicted with his curriculum vitae. Finally, Brewington advised Dr. Connor, "Please don't assume that you nor any persons or employees affiliated with Connor and Associates, PLLC have immunity from civil or criminal liability as the rules and statutes don't apply when gross negligence is a factor." *Id.*

Brewington continued his stream of letters to Dr. Connor. In a letter dated August 4, 2008, he asked Dr. Connor for "the names of your office staff as they could potentially be named as defendants for legal action." State's Ex. 40. In another fax dated the same day, Brewington advised Dr. Connor to "pull your report" or release the case file by the end of the day, or he would "file a lawsuit for breach of contract where you will be left to explain your actions to a judge, possibly [a] jury." State's Ex. 41. Brewington stated he would "begin subpoenas and depositions immediately." *Id.* In a third fax sent on the same day, Brewington again accused Dr. Connor of "illegal and unethical practices" and stated that he had "until the end of the day to pull the report." State's Ex. 42. He further asserted that because "the situation has elevated from a breach of contract to gross negligence, malpractice, slander and/or libel," he would add Dr. Connor's professional partner, Dr. Deters, and Dr. Connor's office employee, Ms. Davis, to the lawsuit. *Id.*

25

Next, in a faxed letter dated September 3, 2008, Brewington asked Dr. Connor to send him a copy of an "office policy statement" that Brewington had signed. State's Ex. 48. Brewington told Dr. Connor that if he refused to cooperate, Brewington would "assume you have terminated your services as a licensed psychologist with me and will take the appropriate measures to withdraw from the case." *Id.* If Dr. Connor failed to provide the statement or refused to withdraw, Brewington asserted that such conduct would "add to your numerous violations and infractions of Indiana and Kentucky Law, psychology board of the respective states, as well as the APA." *Id.*

In a September 5, 2008 faxed letter, Brewington, after receiving a court order again denying his request for a copy of Dr. Connor's file, directed Dr. Connor to release the entire case file and threatened to again "file a petition for contempt" if he did not comply. State's Ex. 49. He further stated, "The game is over Dr. Connor." *Id.* Next, on October 9, 2008, Brewington sent Dr. Connor a copy of another motion he had filed with the trial court demanding the release of Dr. Connor's entire file. In the motion, he again accused Dr. Connor of "unethical and criminal practices." State's Ex. 51. On December 5, 2008, Brewington instructed Dr. Connor to release all raw test data regarding Melissa or himself, saying "[t]his is not up for debate" and failure to comply would be "a willful illegal act on your part." State's Ex. 55. On December 8, 2008, Brewington again faxed Dr. Connor a request for his case file.

Brewington received some of Dr. Connor's notes, and on January 22, 2009, he sent him another letter demanding additional data, stating again "the game is over Dr.

26

Connor." State's Ex. 159. He again advised that he would ask Dr. Connor to submit to a deposition or courtroom testimony to address "page by page if necessary, ALL of my writings" so that Dr. Connor could explain his conclusions in the custody evaluation. *Id.*

In a February 17, 2009 letter to Dr. Connor, Brewington again demanded a copy of his case file. Brewington told Dr. Connor that if he did not provide a copy of his file "immediately," Brewington would contact the Board and the governor of Kentucky, among others, about the situation. State's Ex. 61. As Brewington promised, he wrote a letter to the Board's counsel, a Kentucky deputy attorney general, on February 19, 2009. In the letter, Brewington again accused Dr. Connor of attempting to cover up "negligent and/or malicious conduct." State's Ex. 60. He further asserted that he intended to file a federal lawsuit against Dr. Connor.

In addition to this lengthy stream of letters and complaints accusing Dr. Connor of criminal conduct and professional wrongdoing, Brewington posted information on the internet describing Dr. Connor in a harshly negative light. On the website MerchantCircle.com, which provides reviews of local businesses, he accused Dr. Connor of being "a very dangerous man who abuses his power." State's Ex. 53. In a March 29, 2009 posting on his own website, Brewington asserted that he searched for Dr. Connor on the website Google "almost every day." State's Ex. 191. He further stated that Dr. Connor "wants to hurt [him]" and did not care about his children's welfare. *Id.* In the same posting Brewington stated Dr. Connor "could have easily said that he felt threatened by me so he was withdrawing from the case." *Id.*

27

The jury could have reasonably found from this evidence that after Dr. Connor issued what Brewington perceived to be an unfavorable custody evaluation, Brewington undertook a campaign of harassment and non-violent intimidation to coerce Dr. Connor into altering or withdrawing the evaluation and withdrawing from the case as a witness. In both frequency and tone, Brewington's letters went far beyond what was reasonably necessary to litigate his divorce case or to express displeasure with the evaluation. Threats to sue Dr. Connor, to report him to numerous professional societies and associations, including disciplinary authorities, to report him for alleged criminal behavior, and to subject him to lengthy, harassing depositions could constitute undue coercion. Thus, there is sufficient evidence of non-violent threats or undue coercion to satisfy that element of the offense of attempted obstruction of justice, and we find no grounds for reversal.

## D. PERJURY

In order to obtain a conviction for perjury, the State was required to prove beyond a reasonable doubt that Brewington: (1) made a false, material statement (2) under oath or affirmation (3) knowing the statement to be false or not believing it to be true. Ind. Code § 35-44.1-2-1 (formerly codified as Ind. Code § 35-44-2-1). It is well-settled that confusion or inconsistency alone is not enough to prove perjury. *Daniels v. State*, 658 N.E.2d 121, 123 (Ind. Ct. App. 1995).

The State contended that Brewington lied under oath during grand jury proceedings because he falsely denied knowing that Mrs. Humphrey was married to

28

Judge Humphrey. Brewington argues there is no evidence to establish that he knew Mrs. Humphrey was Judge Humphrey's wife. We disagree. Brewington admitted to the grand jury that he found the Humphreys' address on the Dearborn County Assessor's website. It was established at trial that he could not have found Mrs. Humphrey on that particular website by searching for her individually. Instead, Brewington had to search for "Humphrey" as a last name, which would have revealed that Mrs. Humphrey owned property with James Humphrey. The jury could have reasonably inferred from this evidence that Brewington knew or reasonably deduced that Mrs. Humphrey was Judge Humphrey's spouse.

In addition, Brewington discovered that Mrs. Humphrey had been an advisor to the Supreme Court's Judicial Ethics and Professionalism Committee through the committee's website. However, that website does not provide a forum for complaints about judicial officers or address judicial disciplinary proceedings. Instead, it provides "judicial perspective on ethical issues and to address judicial wellness and judicial families." Tr. p. 357. Furthermore, the committee's website does not provide addresses for its members or encourage the public to contact individual members with issues. The jury could have reasonably concluded that Brewington knew that it was improper to refer to Mrs. Humphrey as an "advisor;" and, to list her personal address as a place to send complaints about the judiciary, but he published her title anyway because he knew that she was Judge Humphrey's wife and wanted the Humphreys to receive such complaints at their home while maintaining a veneer of deniability. This evidence is sufficient to

29

establish that Brewington knew that Mrs. Humphrey was married to Judge Humphrey. There is thus no basis to reverse the jury's verdict on this conviction.

## V. JURY INSTRUCTIONS

### A. INSTRUCTIONS ON THE ELEMENTS OF THE OFFENSES

Brewington challenges the trial court's Final Jury Instructions 1, 2, 3, and 5, claiming that they are legally incorrect because they failed to explain to the jury how to apply principles of free speech to the conduct that led to the charges of intimidating Judge Humphrey, attempted obstruction of justice, and perjury.[13] However, it was Brewington who tendered to the court the language that the court accepted and issued to the jury as Final Instructions 2 and 3. *See* Appellant's Supp. App. pp. 4, 6; Appellant's App. pp. 14-15. Brewington thus invited any error arising out of those two instructions, and we will not consider his challenge to them. *See Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005) (determining that the State could not challenge the merger of two convictions on appeal because it had suggested the merger at trial).

As for Final Instructions 1 and 5, Brewington concedes that he did not object to them at trial. Failure to object to a jury instruction at trial results in waiver of the issue on appeal. *Clay v. State*, 766 N.E.2d 33, 36 (Ind. Ct. App. 2002). However, Brewington argues that these instructions are so flawed that they amount to fundamental error. A litigant may avoid waiver by demonstrating that an instruction constitutes fundamental error. *Id.* Fundamental error is a substantial, blatant violation of due process. *Id.* To

---

[13] We have determined that Brewington's convictions for intimidating Dr. Connor and Mrs. Humphrey must be vacated, so we do not address those convictions further.

qualify as fundamental error, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible.[14] *Id.*

The trial court's Final Instruction 1 is lengthy because it sets forth the elements of each offense. The instruction begins:

> This is a criminal case brought by the State against Daniel Brewington. The State of Indiana, by grand jury, has indicted the defendant with Count I, Intimidation, a Class "A" Misdemeanor, Count II, Intimidation of a Judge, a Class "D" Felony, Count III, Intimidation, a Class "A" Misdemeanor, Count IV, Attempt to Commit Obstruction of Justice, a Class "D" Felony, Count V, Perjury, a Class "D" Felony, and Count VI, Unlawful Disclosure of Grand Jury Proceedings, a Class "B" Misdemeanor.

Appellant's App. p. 10. The instruction goes on to repeat the allegations of the grand jury indictment and state the elements of each charged offense.

The trial court's Final Instruction 5 provides as follows:

The term "threat" is defined by law as meaning an expression, by words or action, of an intention to:

1. unlawfully injure the person threatened or another person, or damage property;
2. unlawfully subject a person to physical confinement or restraint;
3. commit a crime;
4. unlawfully withhold official action, or cause such withholding;
5. unlawfully withhold testimony or information with respect to another person's legal claim or defense, except for a reasonable claim for witness fees or expenses;
6. expose the person threatened to hatred, contempt, disgrace, or ridicule;
7. falsely harm the credit or business reputation of the person threatened; or

---

[14] Brewington also argues that Final Instruction 1 is erroneous because it contains "misleading and prejudicial" language. Appellant's Br. p. 49. He did not object to the instruction at trial, and he does not contend that the language in question renders the instruction fundamentally erroneous. Instead, he raises this argument in the context of his claim of ineffective assistance of counsel, which we address below.

31

8. cause the evacuation of a dwelling, a building, another structure, or a vehicle.

Appellant's App. p. 16. This Instruction closely tracks the language of Indiana Code section 35-45-2-1(c).

Brewington argues that under the First Amendment, the jury should have been instructed that they had to determine that Brewington's posts about Dr. Connor and Judge Humphrey constituted a "true threat" before subjecting him to criminal liability for intimidation or attempted obstruction of justice. Appellant's Br. p. 20. A statement qualifies as a true threat, unprotected by the First Amendment, if it is a serious expression of an intent to commit an unlawful act against a particular individual or group of individuals. *United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008).

Here, Final Instruction 5 told the jury that a threat included, among other definitions, expression of an intent to "unlawfully injure the person threatened or another person." Appellant's App. p. 16. This Instruction adequately informed the jury that, to the extent that its decision to convict Brewington of intimidation or attempted obstruction of justice rested upon threats of violence, it had to determine that his threats were genuine, specific expressions of an intent to subject a person to damages or harm. Consequently, we find no fundamental error.

Next, Brewington repeats his argument set forth above that the State's theory that he had committed intimidation against Judge Humphrey by threatening to expose the judge to hatred, contempt, disgrace, or ridicule is essentially criminal defamation.

32

Consequently, he reasons, the jury should have been instructed that the State was required to prove that Brewington's statements were knowingly false. We have already determined that in a prosecution for intimidation, the truth or falsity of the threat is irrelevant because a threat to disclose true information can place a victim in fear as easily as the disclosure of lies. *See* Section IV.B above. Consequently, we cannot conclude that failure to instruct the jury on civil defamation principles amounts to fundamental error.

## B. BREWINGTON'S PROPOSED INSTRUCTION

Brewington contends that the trial court erred by rejecting his proposed Instruction 5 regarding article I, section 9 of the Indiana Constitution because the other instructions, as a whole, otherwise do not adequately explain how to apply the principles of free expression stated in section 9 to his conduct. We review a trial court's decision on instructing a jury for an abuse of discretion. *Short v. State*, 962 N.E.2d 146, 150 (Ind. Ct. App. 2012). When evaluating a trial court's rejection of tendered instructions, we look to: (1) whether the tendered instructions correctly state the law (2) whether there is evidence in the record to support giving the instruction, and (3) whether the substance of the proffered instruction is covered by other instructions.[15] *Id.* For claims that different instructions should have been tendered by trial counsel, we will not reverse unless the court would have been compelled by law to give the instruction. *Baer v. State*, 942 N.E.2d 80, 96-97 (Ind. 2011).

---

[15] Brewington did not include in his Appellant's Appendix a complete set of the trial court's final jury instructions, and the Transcript omits the trial court's reading of the instructions to the jury.

Brewington's proposed Instruction 5 provides as follows:

You, as the trier of fact, are to decide whether the statements the accused is accused of saying fall under the protections of Art. I, Sec. 9 of the Indiana Constitution, which states:

> **Section 9**. No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever, but for the abuse of that right, every person shall be responsible.

This requires a two step process. You must first decide whether a state action has, in the concrete circumstances of the case, restricted the accused's opportunity to engage in expressive activity. Second, if it has, you must decide whether the restricted activity constitutes an "abuse" of the right to speak under the Indiana Constitution. You must first determine whether the States's [sic] action in this case restricted the accused's opportunity to engage in expressive activity. Under the Indiana Constitution, expressive conduct is to be given a broad interpretation. It extends to any subject whatever, and reaches every conceivable mode of expression. Expressive activity is restricted when the State imposes a direct and significant burden on the person's opportunity to speak their mind, in whatever manner the speaker deems most appropriate.

Appellant's App. p. 38.

This proposed Instruction consists of passages taken from our Supreme Court's decision in *Whittington v. State*, 669 N.E.2d 1363 (Ind. 1996). It is well established that use of certain language in appellate opinions does not necessarily make it proper language for instructions to a jury. *See Ludy v. State*, 784 N.E.2d 459, 462 (Ind. 2003). In any event, in *Whittington* and its progeny our Supreme Court applied article I, section 9 in the context of the crime of disorderly conduct. Brewington does not cite to any cases applying the *Whittington* analysis to the offenses of intimidation and obstruction of justice, and we have not found any. We cannot say that our Supreme Court would apply

34

the balancing of interests discussed in *Whittington* in the same way for criminal offenses other than disorderly conduct. Consequently, the trial court was not compelled by law to give Brewington's proposed tendered instruction to the jury, and we find no abuse of discretion in the giving of the trial court's Final Instruction 3 in this case.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Brewington contends that his trial counsel performed deficiently in many respects and prejudiced his defense. To establish a claim of ineffective assistance of trial counsel, a defendant must demonstrate that counsel performed deficiently and the deficiency resulted in prejudice. *Lee v. State*, 892 N.E.2d 1231, 1233 (Ind. 2008). To establish the first element, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. *Henley v. State*, 881 N.E.2d 639, 644 (Ind. 2008). To establish the second element, the defendant must show prejudice: a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. *Id.* Counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007). If we can resolve an ineffective assistance claim on the question of prejudice, we need not address whether counsel's performance was deficient. *Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009).

## A. ADMISSION OF CUSTODY EVALUATION AND DIVORCE DECREE

Brewington claims his trial counsel should have objected on multiple grounds to the admission of Dr. Connor's custody evaluation and Judge Humphrey's divorce decree into evidence. At trial, counsel objected to the divorce decree on grounds of relevance only, and he raised no objection to the custody evaluation. Brewington argues that if his trial counsel had raised other objections that are discussed below, the objections would have been granted and these documents would have been excluded or heavily redacted.

Brewington first argues that the documents were unfairly prejudicial because they both asserted that Brewington was psychologically disturbed and had committed acts of violence and intimidation against Melissa in the past. Indiana Evidence Rule 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." The balancing of the probative value against the danger of unfair prejudice must be determined with reference to the issue to be proved by the evidence. *Brim v. State*, 624 N.E.2d 27, 35 (Ind. Ct. App. 1993), *trans. denied*.

Here, the custody evaluation and the divorce decree were relevant because these documents were the basis for the criminal charges and were admissible for the purpose of establishing Brewington's motive. Furthermore, many of Brewington's letters and internet postings were admitted as exhibits at trial without objection, and they referred to or quoted the terms of the evaluation and the divorce decree, so admission of those

36

documents was necessary to assist the jury in understanding the basis of Brewington's letters and posts. In addition, at trial both Dr. Connor and Melissa testified as to Brewington's mental state and aggressive behavior, providing evidence of Brewington's potential dangerousness. Although the documents were lengthy, the statements about which Brewington now objects were only small portions of both documents. Consequently, we cannot conclude that if Brewington's counsel had objected to those documents, pursuant to Indiana Evidence Rule 403, the objections would have been sustained. *See Wrinkles v. State*, 749 N.E.2d 1179, 1196-97 (Ind. 2001) (determining that counsel was not ineffective for failing to object to evidence that Wrinkles had behaved aggressively toward his wife in the past because the evidence was relevant to prove motive and there was other damaging evidence against Wrinkles).

Next, Brewington argues that the divorce decree improperly contained Judge Humphrey's opinion on Brewington's criminal guilt. Indiana Evidence Rule 704 states, in relevant part: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions."

In the divorce decree, Judge Humphrey noted, "The record of this case shows that [Brewington] has attempted to intimidate the Court, Court staff, [Melissa], Dr. Connor, and anyone else taking a position contrary to his own." State's Ex. 140, p. 8. This statement does not necessarily indicate that Judge Humphrey believed that Brewington had committed the crime of intimidation, with which he had yet to be charged in any

37

event. To the contrary, Judge Humphrey's statement, in context of the divorce decree's discussion of Brewington's conduct during the case, was a generic reference to Brewington's behavior and failure to control himself during the divorce proceedings rather than a statement of criminal guilt, and did not violate Rule 704. Even if the statement amounted to an opinion that reflected upon the possibility of Brewington's criminal liability, however, in the context of the entire record, the effect of that one statement was minimal. *See Curtis v. State*, 905 N.E.2d 410, 416 (Ind. Ct. App. 2009) (determining that a doctor's brief answer vouching for a witness, in the context of the record, did not prejudice Curtis' defense), *trans. denied*.

Next, Brewington argues that his counsel should have objected to the custody evaluation and the divorce decree because they both contained statements of expert opinion by Dr. Connor regarding Brewington's mental health, but he believes no foundation had been laid for those opinions. Pursuant to Indiana Evidence Rule 702, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Here, to the extent that Dr. Connor's statements about Brewington's mental health in the evaluation and the decree can be considered statements of expert opinion, we conclude that the State provided a sufficient foundation establishing Dr. Connor's knowledge, experience, training, and education. Dr. Connor testified about his

38

educational background, his professional licensing, his lengthy work experience, specifically focusing on mental health evaluations, and his personal observations of Brewington. This evidence established his status as an expert. *See Bennett v. Richmond*, 960 N.E.2d 782, 789 (Ind. 2012) (determining that a psychologist was established as an expert witness by testifying about his education and professional experience).

Finally, Brewington argues that his attorney should have objected to the admission of the custody evaluation because it contained hearsay statements. Brewington fails to cite any authority to support this argument, so the matter is waived. *See Mallory v. State*, 954 N.E.2d 933, 936 (Ind. Ct. App. 2011) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."). Waiver notwithstanding, hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay evidence is not admissible except as provided by law or the Indiana Rules of Evidence. Ind. Evidence Rule 802.

Here, the custody evaluation refers to statements by Melissa, her parents, and her sister about Brewington's mental health and behavior toward Melissa. Those statements in the evaluation are hearsay, and they do not appear to fall under any of the exceptions provided in the Indiana Rules of Evidence. The State argues that the custody evaluation was not admitted for the truth of the matter asserted, but rather was used solely to illustrate motive. We cannot agree, because the record fails to reflect that the evaluation

was admitted solely for that limited purpose and that the jury was instructed to consider the evaluation only for that limited purpose.

Nevertheless, errors in the admission of evidence, including hearsay, are to be disregarded as harmless unless they affect the substantial rights of a party. *Sparkman v. State*, 722 N.E.2d 1259, 1263 (Ind. Ct. App. 2000). To determine whether the defendant's substantial rights were prejudiced, we must assess the probable impact of the improperly admitted evidence upon the jury. *Id.* In this case, the statements in the custody evaluation paint Brewington in a poor light. However, given that the custody evaluation was only one of well over a hundred exhibits admitted at trial through the testimony of eight different witnesses, including the testimony of Dr. Connor and his observations, as well those of Melissa, and many of those exhibits also depicted Brewington as an aggressive, angry individual, we cannot conclude that the admission of the evaluation alone affected Brewington's substantial rights. Consequently, admission of the evaluation was harmless error at best, and Brewington was not prejudiced by his counsel's failure to object.

To establish ineffective assistance for counsel's failure to object, a petitioner must show that the trial court would have sustained the objection had it been made and that the petitioner was prejudiced by the failure to object. *Taylor v. State*, 929 N.E.2d 912, 918 (Ind. Ct. App. 2010), *trans. denied*. Brewington has not established that the trial court would have granted the objections discussed above or that he was prejudiced by

40

counsel's failure to object. Consequently, this aspect of his claim of ineffective assistance of counsel fails.

## B. JURY INSTRUCTION – DISCUSSION OF GRAND JURY PROCEEDINGS

Brewington contends that his counsel should have objected to Final Instruction 1 because it contained misleading and prejudicial language. Specifically, he claims the Instruction repeats the grand jury indictment verbatim for each charge, including repeatedly describing the grand jury members as "good and lawful men and women." Appellant's App. p. 10. Furthermore, he believes the Instruction indicates that the grand jury had already found him guilty of each charge, which misled the trial jury and prejudiced it against him. He asserts that if his counsel had objected, the trial court would have been required to sustain the objection due to that instruction's unduly prejudicial language.

The manner of instructing a jury is left to the sound discretion of the trial court. *Patton v. State*, 837 N.E.2d 576, 579 (Ind. Ct. App. 2005). A ruling on jury instructions will not be reversed unless the error is such that the charge to the jury misstates the law or otherwise misleads the jury. *Id.* Jury instructions must be considered as a whole. *Id.*

In this case, Final Instruction 1 explained to the jury the elements of each charged offense and stated that the State bears the burden of proving the elements of each offense beyond a reasonable doubt. Furthermore, the instruction stated for each offense that the jury should find the defendant not guilty if the State failed to prove each element. We conclude that Final Instruction 1 adequately informed the jury that the duty of

41

determining guilt rested in its hands and that it was not bound by the grand jury's indictment. Thus, the Instruction was not erroneous, and we cannot say that if counsel had objected, the objection would have been sustained. Consequently, counsel's failure to object did not constitute deficient performance.

## C. JURY INSTRUCTIONS – FREEDOM OF EXPRESSION

Brewington argues that his trial counsel should have objected to Final Instructions 1, 2, 3, and 5, citing the First Amendment and article I, section 9 of the Indiana Constitution, raising several specific points. First, he argues that his counsel should have argued that, to the extent the charges of intimidating Judge Humphrey or attempted obstruction of justice involving Dr. Connor relied on threats of violence, the jury was obligated to find that Brewington made "true threats" that were unprotected by the First Amendment. As we noted above, the trial court's Final Instruction 5 told the jury that a threat included, among other definitions, expression of an intent to "unlawfully injure the person threatened or another person, or damage property . . . [or] unlawfully subject a person to physical confinement or restraint." Appellant's App. p. 16. Thus, the jury was adequately instructed that any threats of physical harm by Brewington had to go beyond mere idle words and must have constituted a genuine threat to commit violently criminal acts punishable by law. The Instruction was sufficient, and any objection on this point would not have been sustained.

Next, Brewington argues that his counsel should have objected to Final Instructions 1, 2, 3, and 5 on grounds that, with respect to the intimidation charge

42

involving Judge Humphrey, any threat Brewington made to expose the judge to hatred, contempt, disgrace, or ridicule must have been based on knowingly false information. Otherwise, Brewington reasons, the jury risked punishing Brewington for true speech protected by the First Amendment. We have already determined that the truth or falsity of a threat is not relevant to a claim for intimidation. This is so because the harm caused by the crime, placing someone in fear of retaliation for a prior lawful act, occurs even if the information to be publicized is true. *See* Section IV.B above. Consequently, principles of civil defamation are not relevant here. If Brewington's trial counsel had objected on this point, the objection would not have been sustained, so counsel's performance was not deficient.

Finally, Brewington argues that his counsel should have provided a more complete proposed instruction based on article I, section 9 of the Indiana Constitution. As is noted above, Brewington tendered a proposed instruction that quoted section 9 and provided quotations from a case, *Whittington v. State*, 669 N.E.2d 1363 (Ind. 1996). The trial court rejected that particular proposed instruction but accepted another proposed instruction from Brewington that consisted of the text of section 9. Brewington argues that his public comments about Dr. Connor and Judge Humphrey constituted protected political speech on their government action; specifically since Dr. Connor and Judge Humphrey's participated in his divorce case, and his counsel should have tendered an instruction that informed the jury about the higher standard of protection that article I, section 9 provides to political speech.

43

We have already determined that the trial court was not obligated to give an instruction applying the discussion in *Whittington* and its progeny to this case. Counsel's performance cannot be deemed deficient for failing to tender an instruction that the court would not have been obligated to give. Consequently, we find no reversible error.

CONCLUSION

For the reasons stated above, Brewington's convictions and sentences for Count I, intimidation of Dr. Connor, and Count III, intimidation of Heidi Humphrey, must be vacated. We reverse those convictions and remand with instructions to vacate those convictions. Vacatur does not alter Brewington's aggregate sentence. The trial court's judgment is in all other respects affirmed.

Affirmed in part, reversed in part, and remanded with instructions.

BAKER, J., and RILEY, J., concur.