**Steve SHEPPARD, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 4–585A125.**

Court of Appeals of Indiana, Fourth District.

Nov. 5, 1985.

Rehearing Denied Dec. 17, 1985.

Michael R. Fisher, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

The defendant-appellant, Steve Sheppard, was arrested for the robbery of a fast food restaurant and incarcerated in the Marion County jail. While in jail, Sheppard had at least two telephone conversations with and wrote one letter to Jean Patton, who was an eyewitness to the robbery and an acquaintance of Sheppard's for about two years. In his communications with Patton, Sheppard denied committing the robbery and told Patton not to pick him out of an impending lineup. Based on one of the telephone conversations with Patton, Sheppard was charged with attempted obstruction of justice, a class D felony, IND.CODE § 35-41-5-1, 35-44-3-4 (1982), for attempting to induce, by threat or coercion, a witness to withhold testimony in an official proceeding. At trial, Patton testified that

Sheppard never threatened her over the telephone. The letter written by Sheppard to Patton was introduced into evidence at trial and clearly contains no threatening language. The trial judge, sitting without a jury, found Sheppard guilty of attempted obstruction of justice. Sheppard appeals, alleging the evidence was insufficient to support his conviction. We reverse.

FACTS

On February 25, 1984, a man wearing a ski mask robbed a Kentucky Fried Chicken restaurant at gunpoint. On March 23, Sheppard was charged by information with the robbery. He was arrested and incarcerated in the Marion County jail.

Jean Patton, an acquaintance of Sheppard's for about two years and an employee of the restaurant, witnessed the robbery. On July 26, 1984, while she was at work, Patton received a telephone call from Sheppard, who was calling from the jail through a third party. Sheppard identified himself to Patton, who recognized his voice. At trial, Patton testified to the substance of their July 26 conversation:

Q. [by prosecuting attorney] What did Mr. Sheppard say?

A. [by Jean Patton] He just ...

Q. On this particular phone conversation.

A. He just told me that didn't—he wasn't the guy that robbed us, and he didn't do it. And that they had him, you know, arrested him for something he didn't do.

Q. Did he say anything to you about uh—any line-ups?

A. Yeah.

Q. What did he say?

A. He told me that uh—from me not to uh—well, he told me that he was going to be in a line-up, and that, what number he was going to be up under, and for me not to pick that number.

Q. I'm sorry. I didn't hear that last.

A. For me not to pick that number.

Q. Did he tell you what number he would be under during this line-up?

A. Two.

Q. And what did he say about picking anybody in number two? Do you recall his exact words?

A. He just said that he was going to be up under number two.

Q. I believe that you testified that he said to you, do not pick number two? Is that correct?

A. Yeah. Don't pick that number.

(R. 69–70) At the close of Patton's testimony, the trial judge asked her: "Did he [Sheppard] make any threatening statements to you on the telephone?" and Patton replied "No."[1] (R. 78) Based on the July 26 telephone conversation, Sheppard was charged with attempted obstruction of justice.[2]

Also at trial, a letter postmarked July 16, 1984, written by Sheppard to Patton, was introduced into evidence, over Sheppard's relevancy objection, for the purpose of showing his intent in the July 26 telephone conversation with Patton. Nothing in the letter—in which Sheppard addressed Patton on a familiar, first-name basis; denied being the perpetrator of the robbery; and pleaded with Patton not to identify him as such—can be interpreted as a threat. Sheppard did close the letter, however, as follows: "Please don't say a word about me writeing [sic] you are [sic] talking to you. /s/ Steve Sheppard" (R. 76) The evidence also showed that Sheppard made at least one other phone call to Patton besides that of July 26, 1984, and that Patton asked a police officer if he could get Sheppard to quit calling her at work and "harrassing her and so forth." (Testimony of Officer John Gillespie, R. 79–80).

On this evidence, Sheppard was convicted of attempted obstruction of justice, and he appeals alleging insufficiency of the evidence. We reverse.

---

[1] In the Affidavit for Probable Cause filed with the "Information for Attempt [sic] Obstruction of Justice" in this case, Indianapolis Police Officer John C. Gillespie, who investigated the robbery of the restaurant, swore that Patton told him that Sheppard had stated to her over the phone: "'I don't want to go to jail. I would hate to have something happen to you if I do twenty years cause your [sic] such a nice person.'" (R. 7) The affidavit, however, was not introduced into evidence at trial. Furthermore, Officer Gillespie testified at trial that he spoke with Patton soon after her conversation of July 26, 1984, with Steve Sheppard. Gillespie stated:

A. ... I asked her to tell exactly in other words, I was trying to see if we had a foundation for probable cause. I asked her exactly what did Sheppard tell her. And she said that I don't—to quote him, I don't want to go to jail. I would hate to have something happen to you if I do twenty years, cause you're such a nice person. End of quote that she told me that Steve Sheppard had said. I understand now that I may have misunderstood her in that when he said I would hate to have something happen to, the word me, may have been there or should have been there instead of you. He would hate to have something happen to him, cause he couldn't do twenty years, cause she was such a nice person.

Q. [by prosecuting attorney] Was he saying he didn't want to have something happen to either him or to her. You're unsure of what he meant.

[2] A person attempts a crime when, acting with the *mens rea* necessary to commission of the crime, he takes a substantial step toward its completion. I.C. 35–41–5–1 (1982). Our obstruction of justice statute states, in its relevant subsection:

"Sec. 4. (a) A person who:
(1) knowingly or intentionally induces, by threat, coercion, or false statement, a witness or informant in an official proceeding or investigation to:
(A) withhold or unreasonably delay in producing any testimony, information, document, or thing;
(B) avoid legal process summoning him to testify or supply evidence; or
(C) absent himself from a proceeding or investigation to which he has been legally summoned;
....
commits obstruction of justice, a class D felony."
I.C. 35–44–3–4 (1982).

A. Right.
(R. 80) This evidence is clearly insufficient to hold Sheppard guilty of attempting to induce, *by threat*, Patton to withhold testimony. The problem of precisely what Patton told Officer Gillespie about Sheppard's phone call would not have arisen if the proper investigative tool of taking a written statement from the witness had been utilized before the serious felony charge was filed in this case.

## DECISION

Our standard of review in a criminal appeal challenging the sufficiency of the evidence to support the conviction does not permit us to weigh the evidence or judge the credibility of testimony. Rather, we consider only the evidence most favorable to the state and all reasonable and logical inferences that may be drawn therefrom. Should there be substantial evidence of probative value to support the decision of the trier of fact, the verdict will be affirmed. *McManus v. State* (1982), Ind., 433 N.E.2d 775.

The sole issue in this appeal is whether the evidence was sufficient to prove that, as charged in the information, Sheppard knowingly took a substantial step toward inducing, by coercion, a witness in an official proceeding to withhold in producing any testimony. The evidence in this case clearly was insufficient to prove Sheppard attempted to induce Patton to withhold testimony by threatening her, *see supra* n. 1, and the state does not seriously contend otherwise.

■ The term "coercion" has never been defined in this state for purposes of the obstruction of justice statute, I.C. 35–44–3–4. As a general rule of statutory interpretation, when the language of a statute is clear and unambiguous, the words and phrases thereof are to be given their plain, ordinary and usual sense and meaning. *Clipp v. Weaver* (1983), Ind., 451 N.E.2d 1092; *Daugherty v. State* (1984), Ind.App., 466 N.E.2d 46. The dictionary defines the noun "coercion" as "the act of coercing" and the verb "coerce" as:

"1: to restrain, control, or dominate, nullifying individual will or desire (as by force, power, violence, or intimidation) ... 2: to compel to an act or choice by force, threat, or other pressure ... 3: to effect, bring about, establish or enforce by force, threat, or other pressure ..." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 429 (1976) (examples omitted); *see State v. Darlington* (1899), 153 Ind. 1, 53 N.E. 925 (defining term "coerce" in context of indictment alleging employer unlawfully attempted to coerce his employee from belonging to labor union).[3]

In *United States v. Lester* (9th Cir.1984), 749 F.2d 1288, in discussing the impact of the Victim and Witness Protection Act of 1982, which amended the federal obstruction of justice law, the Ninth Circuit Court of Appeals equated the term "coercion" with the use of some degree of force, though not necessarily physical force. The 1982 Act added a new section 1512 to title 18 of the United States Code. The new section dealt specifically with influencing witnesses. The court in *Lester* stated:

"The witness tampering reached by section 1512 involves the use of force or coercion. Section 1512(a) proscribes knowing use of intimidation, physical force, threats, or misleading conduct to "cause or induce any person to ... be absent from an official proceeding to which such person has been summoned by legal process...." 18 U.S.C. § 1512(a)(2)(D). With the exception of misleading conduct which is not alleged in the present case, all of the activities proscribed by the provision involve *some element of coercion.* Similarly, section

---

**3.** In *State v. Darlington,* our supreme court stated:

"The signification of the word '*coerce*' is 'to impel to, or restrain from, action by physical or moral force; to constrain to do, or forbear, by force or fear; to compel.' Standard Dictionary.
'(1) To restrain by force, especially by law or authority; to repress. (2) To compel or constrain to any action. * * *
'*Coerce* had at first only the negative sense of checking or restraining by force; as, to coerce a bad man by punishments, or a prisoner with fetters. It has now gained a positive sense, viz, that of driving a person into the performance of some act which is required of him by another; as to *coerce* a man to sign a contract; to coerce obedience. In this sense (which is now the prevailing one), '*coerce*' differs but little from '*compel*,' and yet there is a distinction between them. *Coercion* is usually accomplished by indirect means, as threats or intimidation, physical force being more rarely employed in *coercing*.' Webster's International Dictionary."
*State v. Darlington,* 153 Ind. at 3, 53 N.E. at 926.

1512(b) prohibits intentional harassment that "hinders, delays, prevents, or dissuades any person from ... attending or testifying in an official proceeding...." 18 U.S.C. § 1512(b)(1). Although section 1512(b) apparently requires less force or intimidation than does section 1512(a), the gist of the offense is *coercive conduct.*"

749 F.2d at 293 (emphasis added). Thus, the Ninth Circuit found intimidation, physical force, threats and harassment to involve "some element of coercion" or "coercive conduct."

From all of the above, it appears that "coercion" carries with it, at a minimum, the sense of *some form of pressure or influence being exerted on the will or choice of another.* The form that the pressure or influence may take for purposes of "coercion" in our obstruction of justice statute may vary widely—and certainly includes harassment, physical force, intimidation and threats [4]—as long as it is exerted knowingly or intentionally to induce conduct by a witness or informant that is proscribed by the statute, I.C. 35–44–3–4.

The act of obstruction of justice with which Sheppard was charged in the information consisted of a single telephone call placed on July 26, 1984, to the witness Patton, in which, according to Patton's testimony, Sheppard told her where he would be standing in the lineup and not to pick him out. Although there were other communications between Sheppard and Patton that, when considered together with the July 26 telephone call, might add up to harassment sufficient to constitute coercion, Sheppard was not charged with attempting to obstruct justice by the sum of his communications, but only by the telephone call of July 26, 1984. There was no evidence Sheppard used physical force, intimidation or threats against Patton in attempting to induce her to withhold testimony.

It is a fundamental tenet of statutory construction that criminal statutes are to be strictly construed against the state. *Pennington v. State* (1981), Ind., 426 N.E.2d 408; *Doyle v. State* (1984), Ind. App., 468 N.E.2d 528. Although there is no doubt that Sheppard attempted to induce Patton to withhold testimony or that the legislature, with a properly drawn statute, could prohibit inducement as such, Indiana Code section 35–44–3–4 requires inducement by "threat, coercion, or false statement." We find absent from Sheppard's attempt to induce Patton, in their July 26 telephone conversation, the element of pressure being exerted on the will of another, which we believe is necessary to "coercion" as used in the obstruction of justice statute. Sheppard simply told Patton—a person to whom he was no ominous stranger but an acquaintance of almost two years with whom he was on a first name basis—where he would be standing in the lineup and not to pick him out. Absent any indication to Patton of the consequences

---

**4.** We recognize an overlap between two of the methods of inducing a witness—threat and coercion—prohibitted by I.C. 35–44–3–4. The dictionary definition of "coercion," quoted in the text, and of "threat," *infra,* and the circuit court's opinion in *United States v. Lester, supra,* make clear that the two terms share a great deal of meaning. The dictionary defines "threat" as:

"1: an indication of something impending and usu. undesirable or unpleasant ... as: a: an expression of an intention to inflict evil, injury or damage on another usu. as retribution or punishment for something done or left undone ... b: expression of an intention to inflict loss or harm on another by illegal means and *esp. by means involving coercion or duress of the person threatened* ... 2: something that by its very nature or relation

to another threatens the welfare of the latter ..."

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2382 (emphasis added) (examples omitted).

We find a difference between "threat" and "coercion", however, in that while all threats are coercive—since they expressly or impliedly exert pressure on the will or choice of another—not all coercion involves the use of threats. Two of the meanings we find included in "coercion"—harassment and actual physical force—are not included in "threat" because a threat is an expression of intent to harm the welfare of another, which is more than the continual annoyance of harassment but less than the actual use of physical force. Thus, "coercion" is a broader term than "threat."

that would follow her failure to obey Sheppard's instructions, his statement to her amounts to nothing more than a request.

We do not mean to imply that otherwise innocent conduct with the intent to induce a witness to act in a way prohibited by the obstruction of justice statute could never rise to the threshold of pressure necessary to constitute coercion. If the defendant were unknown to the witness he contacted with intent to induce, or if the defendant were charged with making repeated, harassing contacts with the witness with such intent, the threshold of pressure might be reached. In this case, however, we hold the evidence insufficient to prove coercion and, therefore, insufficient to support Sheppard's conviction.

Reversed.

YOUNG, P.J., concurs.

CONOVER, J., dissents with separate opinion.

CONOVER, Judge, dissenting.

I respectfully dissent. There is substantial evidence of probative value in this case which supports the trial court's judgment. Thus, in my opinion, we should affirm the trial court.

The following probative facts appear in the record:

1. Sheppard placed a telephone call while in jail through a third person to the witness. During that call, Sheppard told her he was not the robber, told her he would be number two in the lineup, and asked her not to identify number two as the perpetrator.

2. Sheppard later contacted the witness by letter. It ended with a request she keep the fact he was soliciting her not to identify him as the robber a secret.

3. The witness received at least one other phone call from Sheppard, the result being she asked a police officer if he could get Sheppard to quit calling her at work and "harassing her and so forth."

4. Officer Gillespie's memory as to his first conversation with the witness, while faulty as to whether the word "you" or "me" was used in the context of something happening "if I do twenty years," under all of the other circumstances in this case constitutes probative evidence for the court's consideration.

Finally, it is the trier of fact's exclusive province to resolve conflicts in the evidence and determine the credibility of witnesses. In case of conflicting evidence, the trier of fact is not obliged to believe the testimony of the defendant or any other particular witness. *Graves v. State* (1984), Ind., 472 N.E.2d 190. If the trier of fact deems a witness unworthy of credit, it is not bound to believe his testimony simply because he has testified. *Grossenbacher v. State* (1984), Ind., 468 N.E.2d 1056. It is free to believe whomever it chooses in its fact finding function, *McBrady v. State* (1984), Ind., 459 N.E.2d 719, and has a right to believe part of the testimony of a witness, and disbelieve and reject part thereof. *Thomas v. State* (1983), Ind., 451 N.E.2d 651.

There is substantial evidence of probative value in this record Sheppard attempted to "coerce" the witness, Patton. It supports the trial court's judgment Sheppard was guilty of attempted obstruction of justice.

For those reasons, I would sustain the trial court.