

**FILED**
Mar 31 2020, 10:12 am
**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

James H. Voyles, Jr.
Tyler D. Helmond
Voyles Vaiana Lukemeyer Baldwin &
Webb
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

F. Aaron Negangard
Chief Deputy Attorney General

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jennifer Cook,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | March 31, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2225<br><br>Appeal from the Bartholomew<br>Superior Court<br><br>The Honorable James D. Worton,<br>Judge<br><br>Trial Court Cause No.<br>03D01-1805-F6-2921 |

**Brown, Judge.**

[1] Jennifer Cook appeals her conviction for attempted obstruction of justice as a level 6 felony. We affirm.

## Facts and Procedural History

[2] Darren Collins lived at a residence in Ogilville in Bartholomew County for close to fifty years. Collins became aware of a dispute between Cook and the Brumleys regarding noise coming from Cook's house. Collins lived less than a quarter mile from Cook's residence, the noise bothered him, and he called and made reports about it. At some point, a court proceeding was initiated as a result of the dispute, and Collins was subpoenaed to provide a deposition for the trial.

[3] On April 26, 2018, Collins was mowing his cousin's property, and Cook, whom he had not previously met, stood in the path of the mower and motioned for him to stop. Collins stopped the mower and removed his earplugs so he could hear what she was saying. Cook told him she wanted to meet him and he was one of the persons suing her, even though he had not sued her. She stated she wanted to know why he "was doing this" and asked what he "had to gain from this." Transcript Volume II at 25. Collins said he did not know he was suing her, and she said, "well you are one of the persons that is involved with this." *Id.* Collins believed she was referring to the case with the Brumleys. Cook said he had made numerous reports and she had a "document file of all of the times that [he had] called in." *Id.* at 26. Cook told him he "needed to consider what was going on and take this opportunity to bow out of the proceedings so that . . . [he] wouldn't be further involved and . . . that [he] wouldn't lose anything in

the end." *Id.* She also said that she was a successful woman and "she had uh, the proof of that, by her home, and her cars and all of that, that she was a winner" and he "could stand to lose everything, and that [he] would wind up with nothing." *Id.* She also told him he "needed to make the right decision." *Id.* at 28. After the conversation, Collins was a "nervous wreck," started parking his car differently, did not stay at home "a lot," and was "just tore up." *Id.* at 29.

[4] At some point, Collins made a complaint with the prosecutor's office, and Bartholomew County Sheriff's Detective William Kinman obtained a recorded statement from Collins.

[5] On May 25, 2018, the State charged Cook with attempted obstruction of justice and intimidation as level 6 felonies related to her alleged conduct on April 26, 2018, and attempted obstruction of justice and intimidation as level 6 felonies related to other alleged conduct on May 17, 2018. On January 31, 2019, the court granted the State's motion to dismiss the two charges of intimidation.

[6] On July 24, 2019, the court held a bench trial. Detective Kinman and Collins testified. On cross-examination, Cook's counsel stated: "[Y]ou told the Detective that you didn't hear much that she said, because you had your headset on, your ear plugs on and the mower was running?" *Id.* at 42. Collins answered: "Initially." *Id.* When asked at what point he removed the earplugs, he answered "[a]s soon as she started to talk." *Id.* When asked if he told Detective Kinman that he did not remember what Cook said because he was on

the mower with earplugs on, he answered affirmatively. The court admitted a transcript of his statement to Detective Kinman in which Collins at one point stated that he did not remember what Cook said because he was on the mower and had his earplugs in half the time, but also detailed Cook's statements to him.

After the State rested, Cook's counsel moved for a dismissal pursuant to Ind. Trial Rule 41(B), which the court denied. Cook testified that a dispute arose over noise coming from her house, she knew Collins made some police reports, she was facing criminal charges related to the noise, she never said anything about suing him or that he would lose anything, she believed she had been falsely charged over the noise, and she did not threaten him or try to intimidate him.

The court found Cook guilty of attempted obstruction of justice as a level 6 felony relating to April 26, 2018, and not guilty of attempted obstruction of justice related to May 17, 2018. The court sentenced Cook to one year all suspended to probation.

## Discussion

Cook argues the State failed to prove threat or coercion regarding a specific official proceeding or investigation because the content of the communication between Collins and Cook is unclear. She asserts the essence of the communication between them was that they should solve any differences they had as neighbors and without the need for the intervention of others. She also

relies upon the rule of lenity and asserts the conviction is grounded in an ambiguous interpretation of obstruction of justice. The State asserts Cook's conviction rests on substantial evidence.

[10] When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the factfinder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* Appellate courts, when confronted with conflicting evidence, must consider the evidence most favorable to the trial court's ruling. *Id.* We will affirm unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* at 147.

[11] Ind. Code § 35-44.1-2-2 governs obstruction of justice and provides that "[a] person who . . . knowingly or intentionally induces, by threat, coercion, false statement, or offer of goods, services, or anything of value, a witness or informant in an official proceeding or investigation to . . . withhold or unreasonably delay in producing any testimony, information, document, or thing . . . commits obstruction of justice, a Level 6 felony . . . ." An "'[o]fficial proceeding' means a proceeding held or that may be held before a legislative, judicial, administrative, or other agency or before an official authorized to take evidence under oath, including a referee, hearing examiner, commissioner, notary, or other person taking evidence in connection with a proceeding." Ind.

Code § 35-31.5-2-218. The State alleged that Cook "did knowingly or intentionally attempt to induce by threat or coercion Darren L. Collins, a witness in an official proceeding or investigation, to withhold testimony." Appellant's Appendix Volume II at 15.

[12] A person attempts to commit a crime when, acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime. Ind. Code § 35-41-5-1. A "substantial step" for purposes of the crime of attempt, is any overt act beyond mere preparation and in furtherance of intent to commit an offense. *Hughes v. State*, 600 N.E.2d 130, 131 (Ind. Ct. App. 1992). Whether a defendant has taken a substantial step toward the commission of the crime is a question of fact to be decided by the trier of fact based on the particular circumstances of the case. *Id.* When determining whether the defendant has taken a substantial step toward a crime, the focus is on what has been completed, not on what remains to be done. *Id.* at 132.

[13] "Under the obstruction of justice statute, the term 'coercion' 'carries with it, at a minimum, the sense of some form of pressure or influence being exerted on the will or choice of another.'" *McElfresh v. State*, 51 N.E.3d 103, 108 (Ind. 2016) (quoting *Sheppard v. State*, 484 N.E.2d 984, 988 (Ind. Ct. App. 1985), *reh'g denied*, *trans. denied*) (italics omitted). "The form of pressure or influence 'may vary widely—and certainly includes harassment, physical force, intimidation, and threats—as long as it is exerted knowingly or intentionally to induce conduct by a witness or informant that is proscribed' by the obstruction of

justice statute." *Id.* (quoting *Sheppard*, 484 N.E.2d at 988). In addition, the failure to comply must be accompanied by a consequence. *Id.* (citing *Brown v. State*, 859 N.E.2d 1269, 1271 (Ind. Ct. App. 2007), *trans. denied*). "If there is no consequence, the 'statement is not coercive, but is merely a request.'" *Id.* (quoting *Brown*, 859 N.E.2d at 1271). The Indiana Supreme Court has held that "true statements may still be coercive and sufficient to support an obstruction of justice conviction." *Id.* at 106.

[14] The record reveals that Collins became aware of a dispute between Cook and the Brumleys regarding noise coming from Cook's house which resulted in a court proceeding. At some point, Collins was subpoenaed to provide a deposition for the trial. Collins testified that Cook told him he "needed to consider what was going on and take this opportunity to bow out of the proceedings so that . . . [he] wouldn't be further involved and . . . that [he] wouldn't lose anything in the end." Transcript Volume II at 26. She also said that she was a successful woman and "she had uh, the proof of that, by her home, and her cars and all of that, that she was a winner" and he "could stand to lose everything, and that [he] would wind up with nothing." *Id.* We respectfully disagree with the dissenting opinion's characterization of the statements by Cook to Collins, who was a witness subpoenaed to provide a deposition, that he needed to take the opportunity to bow out of the proceedings so that he would not lose anything in the end, that he could stand to lose everything, and that he would wind up with nothing, as merely a standard conversation between neighbors. When asked if he believed she was

threatening him with something, he answered affirmatively. To the extent Cook asserts that Collins admitted he was initially wearing ear protection and did not understand much of what was said, Collins testified that he removed his earplugs "[a]s soon as she started to talk." *Id.* at 42.

[15] Based upon the record, we conclude the State presented evidence of probative value from which the trier of fact could find beyond a reasonable doubt that Cook committed attempted obstruction of justice as a level 6 felony.[1] *See McElfresh*, 51 N.E.3d at 109-111 (holding that a reasonable fact finder could conclude that the letter sent by defendant was coercive within the meaning of the obstruction of justice statute and that defendant was guilty of attempted obstruction of justice).

[16] To the extent Cook relies upon the rule of lenity, the Indiana Supreme Court has held that if we conclude a statute is ambiguous, then we resort to the rules of statutory interpretation to fulfill the legislature's intent, which includes the rule of lenity, which requires interpreting the statute in the defendant's favor as

---

[1] To the extent Cook cites *Robinson v. State*, 126 N.E.3d 807 (Ind. Ct. App. 2019), and *Brown v. State*, 859 N.E.2d 1269 (Ind. Ct. App. 2007) *trans. denied*, we find those cases distinguishable. In *Robinson*, the court held that, "although there is no doubt that Robinson attempted to induce K.R. to withhold testimony, none of Robinson's statements explicitly or implicitly indicate any consequence to K.R. if she failed to comply" and that "Robinson's statements amount only to requests that are not sufficient to constitute coercion." *Robinson*, 126 N.E.3d at 810. In *Brown*, the court held that the defendant's statements "were only promises with no declaration of consequences for failure to comply" and "[w]ithout a declaration of a consequence for failure to comply, these statements cannot be coercive." *Brown*, 859 N.E.2d at 1271. The court also held that the defendant's statement of a promise to perform sexual acts was a promise with a declaration of a consequence but "the standard for coercive behavior is a declaration of consequences that would follow for *failure* to comply" and because the statement "had no indication of what would happen if she did not comply, the statement was not coercive." *Id.* In light of Collins's testimony regarding Cook's statements that he could stand to lose everything and that he would wind up with nothing, we find *Robinson* and *Brown* distinguishable.

far as the language can reasonably support. *Day v. State*, 57 N.E.3d 809, 813 (Ind. 2016). In *Gomillia v. State*, which is cited by Cook, the Court discussed the obstruction of justice statute, observed that penal statutes should be construed strictly against the State and ambiguities should be resolved in favor of the accused, noted that the State was required to prove that Gomillia knew the statements were false when he communicated them to a witness and not just that the statements were in fact false, and held that there was no evidence that Gomillia knew the statements were false. 27 N.E.3d 1175, 1178 (Ind. Ct. App. 2015). We note that the State did not allege Cook provided a false statement. Further, Cook does not specifically suggest what is ambiguous about the statute. We cannot say that the rule of lenity requires reversal.

[17] For the foregoing reasons, we affirm Cook's conviction.

[18] Affirmed.

Riley, J., concurs.

Baker, J. dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Jennifer Cook,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

Court of Appeals Case No.
19A-CR-2225

**Baker, Judge, dissenting.**

I respectfully dissent.

According to Darren Collins, on April 26, 2018, Jennifer Cook approached him while he was mowing his lawn and said the following:

> Yeah, she told me there that uh, you know, that I needed to consider what was going on and take this opportunity to bow out of the proceedings so that, you know, that, that way with that I wouldn't be further involved and you know that, that I wouldn't lose anything in the end. Uh she said that she is a successful women [sic] and that she had uh, the proof of that, by her home, and her cars and all of that, that she was a winner and said that,

you know, I could stand to lose everything, and that I would wind up with nothing.

Tr. Vol. II p. 26. It is based on this testimony that the jury found Cook guilty of Level 6 felony attempted obstruction of justice. And here, the majority affirms that conviction, finding that a reasonable trier of fact could have convicted Cook of the underlying criminal offense based on this evidence alone.

[21] However, I believe that this result ventures into questionable territory. Though we are not triers of fact and it is not our job to reweigh evidence on appeal, *see Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005), in my view, this testimony, viewed in a light most favorable to the trial court's judgment, does not establish an attempted threat or coercion from Cook, a required showing under the obstruction of justice statute.[2]

[22] Under First Amendment principles, it is well established that "[s]tatutes which threaten to inhibit the exercise of constitutional rights or which impose criminal penalties are subjected to greater scrutiny and less vagueness is tolerated in them than in other types of laws." *Helton v. State*, 624 N.E.2d 499, 506 (Ind. Ct. App. 1993). Though I do not question the constitutionality of the obstruction of justice statute, I note that we must evaluate these types of statutes with greater scrutiny, as they can chill ordinary speech between private individuals. And in my opinion, this colloquy between Cook and Collins amounts to a standard

---

[2] *See generally* Ind. Code § 35-44.1-2-2(a)(1).

conversation between neighbors, plain and simple. Cook approached Collins while he was mowing his lawn, Collins was wearing earbuds and listening to music, and beyond Collins testifying that he "started parking the car differently and . . . didn't stay home a lot," tr. vol. ii p. 29, he did not testify that he thought Cook would actually come through on anything she said.

[23] It is true that Collins had previously given a deposition for a court proceeding involving Cook. But to convict Cook of attempted obstruction of justice for the aforementioned language is concerning and, quite frankly, a bit of a stretch. Nothing in this criminal statute precludes Cook from discussing the case with her friends, family, or even random strangers. And going forward, it is worth wondering what other "threatening" or "coercive" language might be proscribed under this statute and under the analysis employed by the majority.

[24] In other words, should a conviction like this be upheld, I am worried that other individuals might be caught in the crosshairs of criminal prosecution for attempted obstruction of justice should they engage in similar conversations. If anything, we would encourage friends and neighbors to resolve disputes amongst themselves without any court involvement; allowing Cook's conviction to stand could discourage these very resolutions from taking place. In my view, the evidence here is insufficient to support a conviction for

attempted obstruction of justice, and no reasonable factfinder could find the elements of this crime proved beyond a reasonable doubt. [3]

[25] For the foregoing reasons, I would reverse Cook's conviction. I respectfully dissent.

---

[3] I also take issue with the majority's outright dismissal of *Robinson v. State*, 126 N.E.3d 807 (Ind. Ct. App. 2019), and *Brown v. State*, 859 N.E.2d 1269 (Ind. Ct. App. 2007) as persuasive. Instead of contrasting the substance of Cook's alleged "threats" with the language found by the *Robinson* and *Brown* Courts to be non-coercive, the majority simply declares that Cook's statements about how Collins "could stand to lose everything" and "would wind up with nothing," tr. vol. ii p. 26, are distinguishable. Nothing in the majority's analysis explains why Cook's statements are any different or more threatening, and, in lieu of probing further, the majority shifts to a discussion on the rule of lenity.